AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Thomas Perricone, 17-083) 

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

United States of America )
v. )
Mehdi Nikparvar-Fard, a/k/a Mehdi Armani ) Case No. 17-1191
)
)
)
)
*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 29, 2017__ in the county of __Philadelphia__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. sec.115, and 18 U.S.C. sec. 1001 | Retaliating Against a Federal Official by Threatening, and Making a False Statement |

This criminal complaint is based on these facts:
See Attached Affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Daniel Soeffing, DEA Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 1, 2017

_____
*Judge's signature*

City and state: Philadelphia, PA    U.S. Magistrate Judge Thomas J. Rueter
*Printed name and title*

17-1191

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT

Your affiant, Daniel R. Soeffing, Special Agent of the Drug Enforcement Administration (DEA) being duly sworn, states as follows:

### I. INTRODUCTION

1. I am a Special Agent (SA) with the Department of Justice (DOJ), Drug Enforcement Administration (DEA), and have been so employed since November 2004. Prior to my employment with the DEA, I obtained a B.A. and J.D. I have also obtained a M.A. in BioEthics (Medical Ethics) while working for the DEA. I am assigned to the DEA's Tactical Diversion Squad (TDS) in Philadelphia. I have worked in the TDS from March 2014 to the present. The TDS includes special agents, investigators, and task force officers of the DEA; special agent(s) of the FBI; and special agent(s) of the HHS/OIG. My other DEA assignments include from May 2005 through April 2009, I was assigned to the DEA Los Angeles Field Division working as a member of the Southwest Border Initiative Group 3, which specialized in Major Mexican Drug Traffickers and later Group 5, which specialized in Narcotics-Terrorism-related organizations. From April 2009 through March 2014 I was assigned to the Philadelphia Field Division Financial Investigations Team. During my employment with the DEA, I have authored, executed, and led teams of Agents and Task Force Officers in numerous search warrants and arrest warrants.

2. My participation in this investigation includes, but is not limited to, my review of the following: (1) information obtained from law enforcement officers, including members of the United States Marshals Service; (2) a cell phone recording made by a United States Marshal during the arrest of Mehdi NIKPARVAR-FARD; (3) physical surveillance conducted by DEA agents and Task Force Officers (TFO); (4) records and indices checks; and (5) information from

an FBI Confidential Human Source (CHS-1). Because this affidavit is submitted for the limited purpose of establishing probable cause to arrest, I have not set forth all facts that are known to me about Mehdi NIKPARVAR-FARD and his business.

3. I can report that Mehdi NIKPARVAR-FARD, who is also known as Mehdi ARMANI, is a practicing physician in Pennsylvania. He has a DEA Registration Number BN8871231, which authorizes him to prescribe controlled substances. He owns and operates Advanced Urgent Care (AUC), which is also known as Elite Medical and Rehabilitation, at six (6) Pennsylvania locations. Speaking generally, AUC provides medical services to the public that include urgent care, pain management, and suboxone treatment. There is an AUC medical office located at 5058 City Avenue, Philadelphia, Pennsylvania.

4. I believe the facts described below establish probable cause that on or about August 29, 2017, in Philadelphia, in the Eastern District of Pennsylvania, the defendant made a materially false or fraudulent statement to the U.S. Marshals Service when he denied he was Mehdi NIKPARVAR-FARD, the person the U.S. Marshals Service had been ordered to arrest by U.S. District Court Judge Cynthia M. Rufe on August 28th. I believe his conduct is a violation of 18 U.S.C. §1001. On that same date, in Philadelphia, in the Eastern District of Pennsylvania, the defendant also threatened to assault or murder a federal law enforcement officer with the intent to retaliate against such law enforcement officer on the account of the performance of his official duties. I believe his conduct is a violation of 18 U.S.C. § 115.

## II. THE ARREST

5. DEA Investigator (INV) Sheri Gillespie and your affiant separately interviewed three Deputy United States Marshals in connection with this investigation: (a) Thomas Gabriel, (b) John Grandison, and (c) Johannes Jarkowsky. The interviews discussed their service of Civil

Arrest Warrant for Mehdi NIKPARVAR. The arrest warrant was issued by the Clerk's Office following an August 28th Order by U.S. District Court Judge Cynthia M. Rufe on Misc. Action No. 17-11. The arrest took place on Tuesday, August 29, 2017, at approximately 1:00 pm at 5058 City Line Avenue in Philadelphia.

6. Deputy U.S. Marshal (DUSM) Gabriel has 13 years of experience serving arrest warrants. He, along with DUSM Grandison and DUSM Jarkowsky, drove to 5058 City Avenue in an unmarked police car. All three U.S. Marshals wore casual street clothing. DUSM Gabriel parked in the front of 5058 City Avenue and he and DUSM Grandison entered the front business door. DUSM Jarkowsky watched the side entrance/exit of the business.

7. DUSM Gabriel stated that he and DUSM Grandison were greeted by a female receptionist who asked if they were there for pain management. DUSM Gabriel identified himself as a U.S. Marshal and indicated he was looking for Mehdi NIKPARVAR. The receptionist went to a back hallway of the business; during that time, DUSM Gabriel and DUSM Grandison saw and immediately recognized Mehdi NIKPARVAR-FARD inside the business. Both recognized him from a photo they carried with them.

8. DUSM Gabriel asked NIKPARVAR-FARD if they could speak in private. NIKPARVAR-FARD did not agree to that request. DUSM Gabriel identified himself as a U.S. Marshal and reported the he had an arrest warrant for NIKPARVAR-FARD. He showed the warrant to NIKPARVAR-FARD. At this point, NIKPARVAR-FARD pointed to the name on the warrant - - NIKPARVAR-FARD - - and stated "that's not me." NIKPARVAR-FARD then produced a driver's license with the name Mehdi ARMANI. DUSM Grandison noted that the date of birth and first name on the license were the same, and stated that NIKPARVAR-FARD would have to come with them to be fingerprinted. NIKPARVAR-FARD was handcuffed.

During this process, NIKPARVAR-FARD referred to DUSM Grandison (who is African American) as a "ni—er."

9. DUSM Gabriel stated that DUSM Jarkowsky entered the building at some point during the conversation with NIKPARVAR-FARD. All three U.S. Marshals heard NIKPARVAR-FARD demand to be taken out the side door of AUC. DUSM Gabriel and DUSM Grandison stated that NIKPARVAR-FARD was taken out the front door because it was the quickest and safest way to their vehicle.

10. DUSM Gabriel stated that he did a quick patdown search of NIKPARVAR-FARD and placed him in the vehicle on a back passenger seat (driver's side). During the trip back to the federal courthouse, DUSM Grandison drove, DUSM Gabriel sat in the front passenger seat, and DUSM Jarkowsky sat on the rear passenger side. NIKPARVAR-FARD was handcuffed and in a seatbelt.

11. DUSM Gabriel stated that NIKPARVAR-FARD used profanities, including the "N-Word", "Faggot" and sexual phrases when speaking to the U.S. Marshals. DUSM Jarkowsky was alarmed by the behavior of NIKPARVAR-FARD, and he used a cell phone to record the majority of the drive to the federal courthouse. Your affiant has reviewed the recording. The following transcript details the alleged threats made by NIKPARVAR-FARD during that trip. The speakers are NIKPARVAR-FARD (N-F) and DUSM Jarkowksy (DUSM):

**N-F:** ... you fuck the judge too? Son of a bitch. Asshole. I do not remember your face. Your face will be with me all the time, OK. We will see each other, don't worry about that. We will see each other.

**DUSM:** Is that a threat?

**N-F:** We will see each other.

**DUSM:** OK.

**N-F:**   You're asking me a question. Do you have the authority to ask me a question?

**DUSM:**   I asked if that was a threat.

**N-F:**   No, don't fuck. Do you have the authority to ask a question?

**DUSM**:   We were having a conversation.

**N-F:**   What were you told? No, you don't have a conversation with me. You cannot have a conversation with me asshole. They didn't teach you this stuff?

**DUSM:**   OK.

**N-F:**   Why should I threat you? You make 40,000 dollars. You're a poor asshole who is struggling to pay his rent and at the end of the month that is all you do. You're lucky to have a job as a marshal. Who do you think you are? For somebody at my scale come to threaten you, is that what you think? If I wanted to do that, I pay a ni--er like this guy five grand to put a fucking bullet in your head if I want to do that. [Unintelligible] in front of you. Somebody with two million dollars income come threaten you. A ni—er. An ass. Two faggots. You think you really at my level? You think that. You think you're at my level? In any respect of the, this society? You think I will have the same retirement as you do?

12.   According to DUSM Jarkowsky, when NIKPARVAR-FARD said that he would "pay a ni—er, like this guy five grand to put a fucking bullet in your head," NIKPARVAR-FARD pointed to the front seat where DUSM Grandison was seated.

13.   When NIKPARVAR-FARD arrived at the federal building, he was taken to the U.S. Marshals cell block where a more thorough search was conducted. A loaded .380 pistol was found concealed in the interior of NIKPARVAR-FARD's jacket. DUSM Jarkowsky stated that upon finding the weapon in his jacket, NIKPARVAR-FARD laughed and said "yeah, it's loaded motherfucker."

## V.   CONCLUSION

14.   For all the foregoing reasons, I submit there is probable cause to believe that Mehdi NIKPARVAR-FARD has violated 18 U.S. § 115 and 18 U.S.C. § 1001. I am therefore requesting an arrest warrant for those offenses.

15. I further request that the Court order that all papers in support of this application, including the affidavit, arrest warrant and complaint, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize this investigation and the confidential sources referenced herein.

Respectfully submitted,

Special Agent Daniel Soeffing
Drug Enforcement Administration

Sworn To and Subscribed Before Me This
_1st_ Day of September 2017.

HON. THOMAS J. RUETER
United States Magistrate Judge